## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TREVON JACKSON,** | : | |
| | | **3:16-CR-130** |
| **Petitioner** | : | |
| **v.** | | |
| | : | **(JUDGE MANNION)** |
| **D.K. WHITE, Warden,** | : | |
| **Respondent** | : | |

## <u>MEMORANDUM</u>

## I.    BACKGROUND

On April 17, 2020, petitioner Trevon Jackson filed, *pro se*, a letter motion for a 30-day furlough from prison at LSCI-Allenwood, Low Security Camp, located in White Deer, Pennsylvania to his house in Wilkes-Barre, Pennsylvania, with his wife and children, and a Motion for Compassionate Release from prison or Reduction of Sentence. Jackson states that he is concerned about his health and well-being in prison and that due to the alleged crowded conditions he is less at risk of contracting the COVID-19 virus at home. He also states that he cannot spend time with his family to comfort them after his great-great grandmother recently passed away due to the alleged national lock down in federal prisons which he states began on April 1, 2020 and is to continue through May 26, 2020. (Doc. 51).

1

On April 20, 2020, Jackson filed a motion for appointment of counsel to assist him with his motion, which he now indicates was filed pursuant to 18 U.S.C. §3582(c)(1)(A). (Doc. 52).

On April 27, 2020, Jackson filed a second *pro se* Motion for Compassionate Release from Prison or Reduction of Sentence pursuant to 18 U.S.C. §3582(c)(1)(A), as well as the CARES Act. (Doc. 53). He attached exhibits to this motion, including copies of his BOP administrative requests for home confinement and responses from Warden White, as well as copies of his BOP medical records, and his November 12, 2019 BOP Reentry Plan-Program Review. He also submitted a copy of his GED as well as a list and certificates of courses he completed in prison.

With respect to his administrative remedy requests attached to his second motion, Jackson included Warden White's April 2, 2020 denial of his March 24, 2020 Inmate Request for compassionate release, along with his request which was based, in part, on the "corona virus" and the crowded prison conditions as well as his alleged medical conditions, including asthma, acute bronchitis, severe chronic migraines, high blood pressure, ADD and "bipolar depression." (Doc. 53 at 9-10). Jackson also submitted a copy of his second Inmate Request (dated April 8, 2020) for compassionate release due to the COVID-19 virus and his medical conditions stating that he "face[s] substantial risk and vulnerability to contract the [virus]" according to the CDC guidelines, as well as the Warden's April 10, 2020 denial of his second request stating that Jackson does not meet the all of the criteria contained in

Attorney General Barr's Memo as well as in the CARES Act. (Doc. 53 at 11-13).

On June 1, 2020, Jackson filed another emergency letter motion under 18 U.S.C. §3582(c)(1)(A) seeking the court to reduce his term of imprisonment to time served and to immediately release him from prison due to his fear that he may contract the COVID-19 virus. (Doc. 55). He contends, without support, that "at leas[t] one staff member at the Allenwood Complex tested positive for the virus." Jackson states that based on his alleged underlying conditions as well as the high likelihood that he will contract the virus in prison, "extraordinary and compelling reasons" exist to modify his term of imprisonment. He alleges that he tried to exhaust all of his BOP administrative remedies by filing an appeal of the Warden's decision at the Northeast Regional level but he claims that this office has not yet responded to his appeal. Jackson contends that "[i]t would be futile to take any further administrative action due to the BOP['s] slow pace and negligence of the BOP in timely and promptly reviewing [his] administrative remedy appeal." Jackson attached to his latest motion exhibits, including a diagram of the alleged dorm like cubes in which he is housed at the low security complex, a copy of his May 27, 2020 letter to the court and Attorney General Barr seeking his immediate release from prison to home confinement, a copy of the educational courses he completed while in prison.

On June 3, 2020, Jackson filed a motion for oral argument regarding his pending motions. (Doc. 56).

3

It is clear from his filings and exhibits that Jackson has not exhausted all of his BOP administrative remedies regarding his two Inmate Requests for Compassionate Release despite the fact that the Warden instructed Jackson that if he was not satisfied with his (the Warden's) April 2, 2020 denial of his request, he could "appeal through the [BOP], Administrative Remedy Process." Additionally, the bottom of the form on which Jackson submitted as his second Request dated April 2, 2020, under Part B-Response section, clearly stated: "If dissatisfied with this response, you may appeal to the Regional Director" and that an appeal must be received "in the Regional Office within 20 calendar days of the date of th[e] response." (Doc. 53 at 9 & 11). As stated, Warden White denied Jackson's second Request on April 10, 2020. (Id. at 13). Jackson alleges that he filed an appeal of the Warden's decisions and that he has not yet received a response from the Northeast Regional Office. As such, he alleges that exhaustion is futile.

In fact, in his second motion, (Doc. 53 at 2), and last motion, (Doc. 55), Jackson concedes that he has not exhausted his BOP administrative remedies by appealing the Warden's denial of his Requests since "[he] believes exhaustion would be futile in [his] case" since "staff made it clear that no inmate in [his] housing unit don't (sic) qualify because nobody meets the criteria or age requirement and denied all requests citing old or unrelated policy on purpose to keep inmate population." Jackson also alleges that "the risk that COVID-19 poses [creates] exigent circumstances" apparently to excuse the exhaustion requirement. However, Jackson states that while

4

there are confirmed cases of the virus in "Allenwood Medium and USP", and that one staff member tested positive at the "Allenwood Complex", (Doc. 55), he concedes that presently there are no reported cases in LSCI-Allenwood, but he believes it will only be "a matter of time [before] it comes here." (Doc. 53 at 2).[1]

In both his motions, Jackson requests his immediate transfer from prison to home confinement, which the court construes as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241 due to the COVID-19 pandemic. (Docs. 51 & 53).[2]

------------

[1]The number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/. According to the BOP's website as of June 4, 2020, there were no positive cases of COVID-19 among inmates and staff at either USP-Allenwood or FCI-Allenwood Medium and one staff member at each facility recovered from the virus. This website belies Jackson's allegation that there are confirmed cases of the virus at USP-Allenwood and FCI-Allenwood Medium, (Doc. 53 at 2), and his allegation that at the "Allenwood Complex" one staff member tested positive for the virus, (Doc. 55). There is no separate listing on the website for Allenwood Low (LSCI), but Jackson indicates there are no cases of the virus there. (Doc. 53 at 2). The court contacted the BOP at LSCI Allenwood and as of June 4, 2020, there were no positive cases of COVID-19 for inmates and staff at this facility.

[2]The court notes that although Jackson cites to §3582(c)(1)(A) as the statutory basis for his motion, he indicates in the caption on his motions that he is the petitioner. Jackson also refers to his Doc. 53 motion as one for compassionate release. The court does not find Jackson's filings are motions against the government. Rather, upon review, the court finds that they constitute a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. *See* Cordaro v. Finley, 2020 WL 2084960 (April 30, 2020). Thus, as Jackson indicates in the caption of his motions, he is the petitioner, but the proper respondent is the Warden at LSCI-Allenwood, D.K. White. *See* 28 U.S.C.

In particular, Jackson seeks the court to immediately release him from confinement in prison at LSCI-Allenwood, Low Security Camp, located in White Deer, Pennsylvania, to home confinement at his house with his wife and children, due to his fear that he may contract the COVID-19 virus in prison and, his fear that if the virus was to spread in the prison, his health and would be in jeopardy due to his underlying medical conditions. Alternatively, the court could construe Jackson's filings as a motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i).

After considering Jackson's motions, (Docs. 51, 53 & 55), the court will dismiss them insofar as they are considered a §2241 habeas petition, without prejudice, due to his failure to exhaust his administrative remedies with the federal Bureau of Prisons ("BOP") under 28 C.F.R. §§542.10, *et seq.* Insofar as Jackson's filings are considered as a motion for compassionate release, they will be dismissed, without prejudice, for lack of jurisdiction due to his admitted failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i).[3]

---

§2243. "The writ, or order to show cause shall be directed to the person having custody of the person detained. These provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge." <u>Rumsfeld v. Padilla</u>, 542 U.S. 426, 434 (2004). Thus, the court will refer to the Warden herein as the respondent.

[3]Even though the government has not yet responded to Jackson's motions, in light of the emergency nature of the filings, the court can dismiss it without prejudice *sua sponte* to the extent it is a §2241 habeas petition and it is clear that he has not exhausted all of his BOP administrative remedies

To the extent Jackson is seeking the court to order the BOP to deem him eligible for immediate home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, the court does not have authority to grant his request for relief and order the BOP to release him to home confinement.[4]

Finally, the court will direct the Clerk to more properly open Jackson's petitions for release from prison and transfer to home confinement based upon the Covid-19, (Docs. 51 & 53), as a petition pursuant to 28 U.S.C. §2241. The Clerk will then forward the appropriate paperwork to the petitioner for completion and return to the court, including the payment of the required filing fee or the presentation of an application to proceed *in forma pauperis.*

## II.   DISCUSSION

In his first petition, and second petition, (Docs. 51 & 53), Jackson seeks his immediate transfer from LSCI-Allenwood to home confinement with his

---

as required. Also, insofar as Jackson's motions are ones for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A), the court can act *sua sponte* to dismiss them based on lack of jurisdiction since it is apparent on the face of his motions and his exhibits that he did not exhaust his administrative remedies regarding his requests for home confinement due to the COVID-19 virus.

[4]It is clear from his Doc. 53 motion that Jackson is also seeking relief pursuant to the CARES Act in addition to a motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A).

wife and requests the court to allow him to serve the remainder of his prison sentence in home confinement stating that he fears his health and his life would be at risk if he contracts the COVID-19 virus. In his third motion, (Doc. 55), Jackson seeks the court to reduce his prison sentence to time served and to immediately release him from prison.[5]

Jackson is currently 28 years old (DOB March 27, 1992) and not in the high risk age category.[6] However, Jackson alleges that he has the above stated medical conditions which would make him more susceptible to serious complications if he did contract the COVID-19 virus. The court has considered Jackson's BOP medical records attached to his motion at pages 15-20, which indicate that he has asthma and uses albuterol "only a couple times a month", acid reflux, hypertension as well as major depressive disorder and "possible bipolar." His diagnosed conditions are reported to be controlled by his prescribed medications. On March 2, 2020, Jackson was also diagnosed with acute bronchitis but it was not reported to be chronic.

---

[5]Jackson is currently serving a 60-month prison sentence that was imposed by this court on December 19, 2016, after he pled guilty to transporting a minor in interstate commerce with intent to engage in criminal sexual activity, aid and abet, 18 U.S.C. §2423(a). (Doc. 36). The court also ordered Jackson to be on five years of supervised release after he was released from prison.

[6]The court also considered Jackson's physical condition stated in his PSR, (Doc. 17 at 2, 10), which reflects that he reported he was in "good physical health" with the exception of seasonal allergies that are controlled by an inhaler.

Further, Jackson states that has now served about 70% of his 60-month prison sentence and that he is "expected to release to a halfway house (RRC) on 1/26/2021." He was also determined by the BOP to be "eligible" under the First Step Act on November 20, 2019. (Doc. 53 at 4, 14). Jackson's projected release date from prison, with good conduct time, is May 27, 2021, and he was misconduct free for the past 6 months according to his November 12, 2019 Individualized Reentry Plan. (Id. at 21). Jackson also alleges that based on the three person open dormitory type rooms in the prison's camp, (*see* diagram attached to Doc. 55), the overcrowded camp, as well as many common areas and close proximity of the inmates to each other, social distancing and other recommended safety measures cannot be practiced. Jackson also complains about the alleged lack of adherence to safety measures at the camp by the BOP as well as the alleged lack of proper medical care (described as "careless and horrible") for the inmates, despite the fact that his BOP medical records belie this contention. As such, Jackson contends that in the camp setting if the COVID-19 virus is introduced, his health and safety will be placed at risk, and he requests that based on "extraordinary and compelling reasons" and based on "exigent circumstances" the court should transfer him to home confinement to complete his remaining prison sentence.

The court visited the BOP's website and as of June 4, 2020, there are no positive cases of COVID-19 reported for staff or inmates at Allenwood

9

Complex, i.e., USP-Allenwood and FCI-Allenwood Medium. [7] See https://www.bop.gov/coronavirus/.

As this court recently stated in Cordaro[8], 2020 WL 2084960, *3, "[n]otwithstanding the myriad of alleged unsafe and unsanitary conditions at [the prison] camp, neither [Jackson] nor any other inmate at the camp have contracted the COVID-19 virus and, to date [June 1, 2020], the prison 'has no reported cases of inmates or staff who have tested positive for the COVID-19 corona virus."

As relief, Jackson requests the court to immediately release him from confinement at LSCI-Allenwood camp, where he admits there were no positive cases of COVID-19, to home confinement with his wife for service of the remainder of his prison sentence.[9]

As this court recently did in Cordaro, 2020 WL 2084960, *3, the court also construes Jackson's instant filings, (Docs. 51 & 53), as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241.

---

[7] Since this court is well-aware of all of the safety measures implemented by the BOP, see Cordaro, 2020 WL 2084960, and since many of the measures are found on the BOP's website, they are not repeated. See also BOP website: www.bop.gov/coronavirus/index.jsp.

[8] Although Cordaro was housed at a different prison camp within this district, the circumstances at both are virtually the same.

[9] The court notes that in Luzerne County, where Jackson wishes to be placed on home confinement with his wife, as of June 4, 2020, there were 2,766 positive COVID-19 cases reported and 155 deaths. See PA Dept. of Health website.

No doubt that a habeas petition under §2241 is the proper vehicle for an inmate to challenge "the fact or length of confinement", Presser v. Rodriguez, 411 U.S. 475, 494 (1973), or the "execution" of his confinement. Woodall v. Fed. BOP, 432 F.3d 235, 241-42 (3d Cir. 2005). Further, the court must look to the remedy requested by the inmate to determine if he is seeking relief available in a habeas petition. "When a petitioner seeks immediate release from custody, the 'sole federal remedy' lies in habeas corpus." Camacho Lopez v. Lowe, 2020 WL 1689874, *8 (M.D.Pa. April 7, 2020) (citing Presser, 411 U.S. at 500).

In Camacho Lopez, the petitioner was an ICE detainee subject to a final removal order whose removal was set for March 30, 2020, but delayed due to his COVID-19 diagnosis. The petitioner filed a §2241 habeas petition seeking immediate release from confinement based on "the threat posed by the COVID-19 viral pandemic." The respondent argued that Camacho Lopez's petition should be construed as a civil rights action under 42 U.S.C. §1983. The court found that "the extraordinary conditions of confinement" "where the petitioner tested positive for and had been hospitalized by a potentially deadly pandemic virus and claims that officials cannot properly treat him---constitute the extreme case in which habeas relief might be available." Id. at 13. The court then concluded that based on the case's unique circumstances, "both the claim brought and the remedy sought are cognizable in habeas corpus." Id. The court found, however, that Camacho Lopez's continued detention in prison was proper and dismissed his habeas

petition. *See also* Verma v. Doll, Civil No. 4:20-14, (M.D.Pa. April 9, 2020) (court found petitioner, an ICE detainee, "plainly seeks a habeas remedy" where he requested immediate release from custody based on alleged "constitutionally deficient conditions of confinement that threaten his life and health" in light of the COVID-19 pandemic); Saillant v. Hoover, 2020 WL 1891854, *3 (M.D.Pa. April 16, 2020) (the court agreed with the conclusions of the courts in Verma and Camacho Lopez "finding that a claim based on the COVID-19 pandemic [at CCCF by ICE detainee] is exactly the sort of 'extreme case' contemplated in [Ali v. Gibson, 572 F.2d 971 (3d Cir. 1978)]" "in which a petitioner may challenge the conditions of his confinement through a petition for writ of habeas corpus.").

In the present case, as in the above cited cases and as well as in Cordaro, 2020 WL 2084960, *4, although Jackson is not an ICE detainee awaiting his removal, he similarly seeks immediate release from custody at LSCI-Allenwood since he believes his health is in imminent risk at the prison due to his underlying medical conditions as well as its alleged unsafe conditions and the possibility that he may contract the COVID-19 virus, which "is unequivocally a habeas remedy." United States v. Serfass, 2020 WL 1874126, *2 (M.D.Pa. April 15, 2020) (citation omitted). Jackson also additionally seeks the court to amend his sentence and to reduce his remaining prison to time served. (Doc. 55). As the court in Camacho Lopez explained, 2020 WL 1689874, 11, the term "execution" of a petitioner's sentence is broadly defined by the Third Circuit "to include such matters as

12

administration of parole, sentence computation, prison disciplinary proceedings, prison transfers, and even 'conditions' generally." (citing Woodall, 432 F.3d at 241-44).

In his instant filing, as in Cordaro, 2020 WL 2084960, *4, Jackson clearly seeks relief that affects the execution of his 60-month prison sentence since he requests the court alter its terms and to immediately release him to home confinement. See Cordaro, 2020 WL 2084960, *4. Although Jackson complains about some of the conditions of his confinement at LSCI-Allenwood, he does not raise any constitutional claims and he is not seeking damages, and thus his filings are not a civil rights action. See Parmeley v. Trump, 2020 WL 1987366, *2 (S.D.Ill. April 27, 2020) (court held that proposed class action civil rights complaint filed by inmates incarcerated in federal prison and in BOP custody who sought release from prison due to the COVID-19 virus was not a remedy that was available under Section 1983 or Bivens, and that "[a] petition for a writ of habeas corpus is the proper route if a prisoner is seeking 'what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation.'") (citation omitted).

As discussed, Jackson shows that he filed two administrative remedy requests and submitted them to Warden White, pursuant to BOP 5050.50, as requests for compassionate release to home confinement due to the COVID-19 virus. Jackson also attaches copies of the written responses he

13

received from Warden White which denied his two requests, essentially finding that Jackson is not an eligible inmate. Thus, White denied both of Jackson's requests based on the COVID-19 virus finding they were not sufficient to reduce his sentence and release him to home confinement. As mentioned, White also advised Jackson that if he was not satisfied with his response, he may appeal through the BOP's administrative remedy process.

Jackson states that he filed an appeal of the Warden's decision with the Northeast Regional Office but he alleges that to date he has not received a response. Jackson alleges that based on his circumstances there are extraordinary and compelling reasons to excuse him from exhausting his BOP administrative remedies regarding his requests for release to home confinement. As such, Jackson is construed as claiming that the COVID-19 virus along with his underlying medical conditions as well as the alleged conditions at LSCI-Allenwood present an extraordinary situation in which exhaustion should be excused. Jackson also contends that exhaustion would be futile since he has not yet received a response to his appeal.

In any event, it is clear that Jackson has not exhausted all of his BOP administrative remedies prior to his instant filings construed as a habeas petition. In particular, as instructed in his exhibits, Jackson must file an appeal with the BOP Regional Director, within 20 calendar days of the date the Warden signed his responses. 28 C.F.R. §542.15(a). Then if the Regional Director denies his appeals, Jackson must appeal that decision to the BOP General Counsel, within 30 calendar days from the date the

14

Regional Director signed the response. *Id.* The appeal to the General Counsel is the final administrative appeal in the process. *Id.*

As in <u>Cordaro</u>, 2020 WL 2084960, *4, Jackson has not exhausted all of his administrative remedies available with the BOP regarding his filings construed as a habeas petition and so the court will dismiss it without prejudice. *See* <u>Furando v. Ortiz</u>, 2020 WL 1922357 (D.N.J. April 21, 2020) (court dismissed without prejudice the habeas petition of inmate serving his federal sentence at FCI-Fort Dix who sought immediate release to home confinement under the CARES Act, based on the COVID-19 virus and his age and chronic medical conditions which he alleged put him at high risk if he contracted the virus, due to his failure to exhaust his BOP administrative remedies available under 28 C.F.R. §§542.10 to 542.19.).

"There is a judicially created exhaustion requirement for habeas petitions brought under 28 U.S.C. §2241." *Id.* at *3 (citing <u>Callwood v. Enos</u>, 230 F.3d 627, 633-34 (3d Cir. 2000)). Generally, "an inmate's failure to exhaust all stages of the administrative remedy system prior to the filing of a habeas petition under 28 U.S.C. §2241 is a proper basis for dismissal." *Id.* (citing <u>Moscato v. Fed. Bureau of Prisons</u>, 98 F.3d 757, 761-62 (3d Cir. 1996)). Exhaustion may be excused in "exceptional cases", such as the futility exception which only applies in "narrowly-defined circumstances." *Id.* at *3-4 (citations omitted).

In the present case, similar to the <u>Furando</u> case and <u>Cordaro</u>, 2020 WL 2084960, *5, this court finds that Jackson must exhaust all of his

15

available BOP administrative remedies challenging the alleged denial of his release to home confinement. Similar to the <u>Cordaro</u> case in which the inmate petitioner was denied release to home confinement due to the COVID-19 virus by the warden, this court again finds that the inmate must still pursue his remaining BOP administrative remedies to challenge the decision denying him release to home confinement. As in <u>Cordaro</u>, 2020 WL 2084960, *5, "[t]he circumstances of [Jackson's] case fit squarely within the purposes of the exhaustion requirement." (citing <u>Furando</u>, 2020 WL 1922357, *3 (stating recognized purposes of exhaustion requirement) (citing <u>Moscato</u>, 98 F.3d at 761-62)). The court finds that none of the exceptions to the exhaustion requirement exist in this case, especially since there are no confirmed cases of the COVID-19 virus at LSCI-Allenwood.

As such, before the court will review the decisions of White denying Jackson's requests for home confinement placement due to the COVID-19 virus, Jackson must exhaust his BOP administrative remedies. Thus, insofar as the court construes Jackson's instant motions, Docs. 51, 53 & 55, as a petition as a habeas corpus petition under 28 U.S.C. §2241, they will be dismissed without prejudice for failure to exhaust BOP administrative remedies. *See* <u>Cordaro</u>, 2020 WL 2084960, *5; <u>Furando</u>*, supra; see also* <u>Simmons v. Warden, FCI-Ashland</u>, 2020 WL 1905289 (E.D.Ky. April 17, 2020) (insofar as inmate was deemed as seeking habeas relief under §2241 with respect to his request for immediate release to home confinement claiming he satisfied criteria in the Attorney General's March 26, 2020

16

Memorandum to the BOP "regarding prioritizing home confinement of current federal inmates where appropriate in response to the ongoing COVID-19 pandemic" and claiming he was eligible for home confinement under the First Step Act, as amended by 18 U.S.C. §3582(c)(A)(1)(i), the court denied without prejudice habeas relief since inmate did not exhaust his administrative remedies within the BOP).

To the extent Jackson's filings are construed as a motion for compassionate release from prison to home confinement under, 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), they will also be dismissed without prejudice for failure to exhaust administrative remedies. *See* <u>Cordaro</u>, 2020 WL 2084960, *5.

Jackson alleges that he has underlying chronic medical conditions putting him at a higher risk if he does contract COVID-19,and he alleges that LSCI-Allenwood is not adhering to the safety measures to protect inmates from contracting the virus if it is introduced there, and that there are "extraordinary and compelling" reasons justifying his compassionate release under §3582(c)(1)(A)(i). Nonetheless, as in <u>Cordaro</u>, 2020 WL 2084960, *5, Jackson admits that has not been exposed to the COVID-19 virus at LSCI-Allenwood. Further, Jackson has not demonstrated with any evidence the lack of effectiveness of the substantial steps, identified by the court above, that the BOP is taking to protect the health and safety of both inmates and staff at the camp as well as all of the federal prisons.

Thus, even though Jackson demonstrates that he presented two requests for compassionate release to White and that they were denied, and he alleges that he has not received a response from the BOP Northeast Regional Office regarding his appeal, his instant motions must be dismissed for lack of jurisdiction since he has not exhausted his administrative remedies under §3582(c)(1)(A), "which requires that a defendant seeking compassionate release present his application to the BOP and then either (1) administratively appeal an adverse result if the BOP does not agree that his sentence should be modified, or (2) wait for 30 days to pass." Cordaro, 2020 WL 2084960, *5 (quoting United States v. Zukerman, 2020 WL 1659880, *2 (S.D.N.Y. April 3, 2020); see also United States v. Raia, 954 F.3d 594 (3d Cir. April 2, 2020); United States v. Cruz, 2020 WL 1904476 (M.D. Pa. Apr. 17, 2020).

Thus, the court cannot address whether Jackson has demonstrated, as he alleges, that "extraordinary and compelling reasons" justify his compassionate release from prison since he has not exhausted his administrative remedies with the BOP as required. Cordaro, 2020 WL 2084960, *6 (citing Zukerman, 2020 WL 1659880, *2 ("in order to be entitled to relief under 18 U.S.C. §3582(c)(1)(A)(i), [Jackson] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of his sentence.")); Raia, 954 F.3d 594 ("The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons'" after the defendant

18

exhausts administrative remedies with the BOP.) (citing 18 U.S.C §3582(c)(1)(A)(i)); <u>United States v. Soto</u>, 2020 WL 1875147, *1 (D.Co. April 15, 2020) ("18 U.S.C. §3582(c)(1)(A) imposes a requirement on a defendant requesting compassionate release to exhaust all administrative rights before seeking such relief.") (citation omitted); <u>United States v. Boyles</u>, 2020 WL 1819887, *2 (D.KS. April 10, 2020) (the court held that since defendant did not exhaust his BOP administrative remedies as required, "it [did] not decide whether he has established that there are 'extraordinary and compelling reasons' why he should be released."); <u>United States v. Wright</u>, 2020 WL 1976828 (W.D.La. April 24, 2020) (court did not need to address whether inmate demonstrated extraordinary and compelling reasons to warrant his release to home confinement under the provisions of the compassionate release statute "due to the grave dangers presented by COVID-19" since inmate did not exhaust his administrative remedies under 18 U.S.C. §3852(c)(1)(A), which is mandatory and "the Court has no power to waive the exhaustion requirement."); <u>Cruz</u>, 2020 WL 1904476, *3; <u>United States v. Edwards</u>, 2020 WL 1987288 (MD.Tn. April 27, 2020) (after an extensive review of recent cases filed in light to the COVID-19 pandemic, the court concluded that "[it] cannot consider the Motion [for compassionate release] until the exhaustion requirement of 18 U.S.C. §3582(c)(1)(A(i) is satisfied", and denied the Motion without prejudice to refiled it once exhaustion was completed).

Further, as in <u>Cordaro</u>, 2020 WL 2084960, *6, the court finds that Jackson does not demonstrate any "catastrophic health consequences" to make exhaustion futile or show that he could be unduly prejudiced if he had to wait to exhaust his administrative remedies with the BOP. *See* <u>Zukerman</u>, 2020 WL 1659880, *3; <u>Cruz</u>, 2020 WL 1904476, *3. In fact, Jackson's BOP medical records show that his diagnosed conditions are controlled by his prescribed medications and that he is receiving proper medical care. In short, Jackson merely speculates that he may be exposed to COVID-19 if he comes into contact with someone at the prison who introduces the virus and he speculates that his health would be in risk if he did contract the COVID-19 virus. As the court stated in <u>Cordaro</u>, 2020 WL 2084960, *6, "[i]t must also be noted that [Jackson] does not allege that he has contracted COVID-19 and he has not suffered any medical consequences from the virus since the pandemic started in the United States. Nor does anyone at the prison have the virus."

This court is bound by the Third Circuit's decision in <u>Raia</u>, 954 F.3d at 597, which explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted). The Third Circuit then stated, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that

strict compliance with §3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.*

Finally, to the extent Jackson relies on the CARES Act, which was signed into law on March 27, 2020, as well as Barr's March 26, 2020 and April 3, 2020 Memoranda to the BOP, such reliance is misplaced.[10]

Under the CARES Act "Congress sought to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home confinement under [Section 602 of the First Step Act] §3624(c)(2)." Furando, 2020 WL 1922357, *2 (citing Pub. L. No. 116-36, §12003(b)(2)). "Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months." *Id.*

Thus, the CARES Act provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020, the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement under the first sentence of 18 U.S.C. §3624(c)(2). *Id.* at *3; Cruz, 2020 WL 1904476, *4.

As such, "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons." *Id.*; Cordaro, 2020 WL 2084960, *6.

---

[10]*See also* Furando, 2020 WL 1922357, *2-3 (court summarized Barr's two Memoranda).

As the court in United States v. Sawicz, 2020 WL 1815851, *1 (E.D.N.Y. April 10, 2020), recently explained:

> [The] CARES Act expanded the maximum amount of time that a prisoner may spend in home confinement: "if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement ...." CARES Act §12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr made the requisite "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons" on April 3, 2020, thereby triggering the BOP's authority to expand the amount of time that a prisoner may spend in home confinement.

As this court recently stated in Cruz, 2020 WL 1904476, *4 and in Cordaro, 2020 WL 2084960, *7, "the determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director." (citing United States v. Doshi, 2020 WL 1527186, *1 (E.D.Mi. March 31, 2020) (The CARES Act "temporarily permits the Attorney General to 'lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement' under §3624(c)(2)", and "the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."); United States v. Coker, 2020 WL 1877800, *1 (E.D.Tenn. April 15, 2020) (court stated that while section 12003 of the [CARES Act] "presently and temporarily provides for expanded prisoner home confinement", "[t]he CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons.") (citations omitted); United States v. Berry, 2020

22

WL 1984117, *3 (M.D.Pa. April 27, 2020) (same). Thus, "[c]ourts … do not have power to grant relief under Section 12003 of the CARES Act." *Id.* (citations omitted); United States v. McCann, 2020 WL 1901089, *3 (E.D.Ky. April 17, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court has no authority under this provision to order that a prisoner be placed on home confinement.") (citation omitted).

Thus, since Jackson has not exhausted his mandatory administrative remedies with the BOP to the extent his instant filings are construed as a motion for compassionate release pursuant to the First Step Act of 2018, 18 U.S.C. §3582(c)(1)(A), the court will dismiss this motion without prejudice for lack of jurisdiction. *See* United States v. Soto, 2020 WL 1875147, *1 (D.Co. April 15, 2020) ("When a defendant fails to satisfy Section 3582(c)(1)(A)'s exhaustion requirement, a court is 'without jurisdiction to entertain [defendant's] request for compassionate release.'") (citations omitted); Boyles, 2020 WL 1819887, *2 (same); Raia, 954 F.3d at 597 (Third Circuit found that the defendants' failure to comply with §3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release …."); Cruz, 2020 WL 1904476, *5; Cordaro, 2020 WL 2084960, *7; United States v. Berry, 2020 WL 1984117, *3 (this court held that "to the extent that Berry's motion is construed as seeking compassionate release, it would be dismissed for lack of jurisdiction since Berry has not exhausted her administrative remedies under §3582(c)(1)(A), ….") (citation omitted); *see*

23

*also* <u>United States v. Feiling</u>, 2020 WL 1821457, *7 (E.D.Va. April 10, 2020) ("Because Defendant has failed to exhaust administrative remedies under §3582(c)(1)(A), the Court lacks authority to grant a sentence modification under that provision.").

In light of the above discussion, the court will also deny Jackson's motion for appointment of counsel, (Doc. 52), and his motion for oral argument, (Doc. 56).

## III.    CONCLUSION

Based on the foregoing, that aspect of Jackson's motions for immediate release from prison and transfer to home confinement related to the COVID-19 pandemic, will be construed as a §2241 habeas petition, **(Docs. 51, 53 & 55).** The Clerk will be directed to open these filings as a separate civil case and forward to the petitioner the appropriate paperwork for such a petition to be completed and returns with the appropriate filing fee or a completed application for *in forma pauperis* status. The habeas petition will be **DISMISSED WITHOUT PREJUDICE** due to his failure to exhaust his BOP administrative remedies under 28 C.F.R. §§542.10. To the extent that Jackson's filings are considered as a motion for compassionate release, they are properly filed, will remain in his criminal case and be **DISMISSED**

**WITHOUT PREJUDICE** for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i). Finally, insofar as Jackson is challenging the decision by the BOP that he is not eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. The court will also deny Jackson's motion for appointment of counsel, **(Doc. 52)**, and his motion for oral argument, **(Doc. 56)**. An appropriate order will follow.

s/*Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: June 5, 2020**
16-130-01

25