# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES,** : | |
| : | 3:16-CR-130 |
| **v.** : | |
| : | (JUDGE MANNION) |
| **TREVON JACKSON,** : | |
| **Defendant** : | |

## MEMORANDUM

## I.   BACKGROUND

On June 15, 2020, defendant Trevon Jackson filed, *pro se*, his fourth Emergency Motion for Compassionate Release and for a Modification in Sentence under 18 U.S.C. §3582(c)(1)(A), as amended by the First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), and request for transfer to home confinement related to his 60-month sentence due to the COVID-19 pandemic and his underlying "chronic medical conditions", namely, hypertension, asthma, tinnitus, and migraines, which he alleges put "him at increased risk from COVID-19." (Doc. 61). (*See also* Docs. 51, 53 & 55).[1] Jackson alleges that the pandemic and his medical conditions "provide an extraordinary and compelling reason for [a] compassionate reduction in

---

[1]The court notes that since it stated the background of Jackson's case in its June 5, 2020 Memorandum (Doc. 58), it will not be fully repeated herein.

[his] sentence." Jackson further alleges that he does not pose a danger to anyone's safety.

Jackson is currently confined in prison at LSCI-Allenwood, Low Security Camp, located in White Deer, Pennsylvania, and he seeks the court to release him to his house in Wilkes-Barre, Pennsylvania, with his wife and children.[2] He states that he has served 3 years and 5 months of his sentence, and that he is due to be released to a halfway house on January 26, 2021. Jackson's projected release date from prison, with good conduct time, is May 27, 2021. (Doc. 53 at 21).

With respect to the exhaustion issue, Jackson contends that the court has jurisdiction to decide his motion on the merits since more than 30 days have now passed since he submitted his requests for compassionate release to the Warden.

---

[2] The number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/. According to the BOP's website as of September 4, 2020, there was one positive case of COVID-19 among inmates and one positive case for staff at Allenwood Low FCI, and both recovered.

Since the government has outlined the safety procedures and protocols enacted by the BOP in prisons to protect inmates and staff and cites to the BOP's websites, they are not repeated herein. (Doc. 65 at 7-14). *See also* BOP website at: www.bop.gov/coronavirus/index.jsp.

The court also notes that Luzerne County, where Jackson is seeking to be released on home confinement, has 3,894 positive cases of COVID-19 and 189 deaths as of September 8, 2020. *See* Pa. Dept. of Health website.

Jackson again attached Exhibits to this motion, including copies of his BOP administrative requests for home confinement and responses from Warden White, as well as copies of his BOP medical records. He also submitted copies of his prison education records.

With respect to his administrative remedy requests attached to his fourth motion, Jackson again included Warden White's April 2, 2020 denial of his March 24, 2020 Inmate Request for compassionate release due to COVID-19 and his medical conditions. (Doc. 61 at 23-24).

Jackson also again submitted a copy of his Inmate Request dated April 8, 2020 stating that he was "dissatisfied" with the Warden's response to his request for compassionate release and that he "face[s] substantial risk and vulnerability to contract the [COVID-19 virus]" according to the CDC guidelines. Jackson attached a copy of the Warden's April 10, 2020 denial of his April 8, 2020 request to his second motion. In his response, the Warden stated that Jackson did not meet the all of the criteria contained in Attorney General Barr's Memo as well as in the CARES Act. (*See* Doc. 53 at 11-13).

On June 15, 2020 and July 8, 2020, Jackson filed letters to the court in support of his motion with Exhibits. (Docs. 62 & 63).

On July 15, 2020, the government filed its brief in opposition to Jackson's motion arguing that it should be denied on its merits. (Doc. 65).

On July 24, 2020, Jackson filed his reply brief with attached Exhibits. (Doc. 66).

On August 13, 2020, Jackson filed an emergency request for a hearing regarding his instant motion stating that LSCI Allenwood has had its first positive case of COVID-19. Jackson attached as an Exhibit to his request a copy of Warden White's August 3, 2020 Memo to inmates stating that LSCI Allenwood had its first confirmed positive inmate case but indicating that it was discovered during the inmate's intake screening at the prison and that "exposure was limited." (Doc. 67). The Warden also re-emphasized the safety requirements that would be enforced at LSCI Allenwood.

It is now clear from his filings and exhibits that Jackson has exhausted his BOP administrative remedies regarding his Inmate Requests for Compassionate Release.

Jackson's fourth motion for compassionate release under §3582(c)(1)(A)(i), (Doc. 61), will be denied on its merits.[3]

---

[3]To the extent Jackson is again seeking the court to order the BOP to deem him eligible for immediate home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, as the court previously held, it does not have authority to grant his request for relief and order the BOP to release him to home confinement. *See* United States v. McCann, 2020 WL 1901089, *3 (E.D. Ky. April 17, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court has no authority under this provision to order that a prisoner be placed on home confinement.") (citation omitted). *See also* United States v. Logan, 2020 WL 2559955, *2 (W.D. N.C. May 20, 2020) ("The Defendant alternatively moves the Court to order his release to home confinement due to the ongoing COVID-19 pandemic. This request, however, must also be denied. The discretion to release a prisoner to home confinement lies solely with the Attorney General."). *See also* 18 U.S.C. §3621 (the BOP is provided

## II.   DISCUSSION[4]

The court will first consider the exhaustion issue since it is a threshold matter. See United States v. Gadsden, 2020 WL 3871083, *1 (W.D. Pa. July 9, 2020) ("In United States v. Raia, 954 F.3d 594 (3d Cir. 2020), the court of appeals held that district courts cannot consider requests for compassionate release under the First Step Act until a prisoner has exhausted his administrative remedies.").

No doubt that the court must "confirm that exhaustion is satisfied because [the Third] Circuit has held that §3582(c)(1)(A)'s exhaustion requirement is mandatory." United States v. Davidson, 2020 WL 4877255, *5 (W.D. Pa. Aug. 20, 2020) (citing United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (mandating "strict compliance" with §3582(c)(1)(A)'s exhaustion requirement)). "The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute." United States v. Schultz, ⸺ F.Supp.3d ⸺, 2020 WL 1872352, at *2 (W.D. N.Y. April 15, 2020) (citation omitted). "A defendant proceeding on his or her own

---

with the sole authority and discretion to designate the place of a defendant's confinement).

[4]Jackson, age 28, is currently serving a 60-month prison sentence that was imposed by this court on December 19, 2016, after he pled guilty to transporting a minor in interstate commerce with intent to engage in criminal sexual activity, aid and abet, 18 U.S.C. §2423(a). (Doc. 36). The court also ordered Jackson to be on five years of supervised release after he was released from prison. Jackson is also required to register as a sex offender pursuant to the Sexual Offender Registration and Notification Act. See 42 U.S.C. §16901, et seq.

motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions." Id. (citations omitted).

"Prior to petitioning a court for relief under §3582(c), a defendant must first file an administrative request for compassionate release with the warden of their facility and then either: (1) fully exhaust BOP's administrative remedies; or (2) wait thirty (30) days from the date their administrative request was filed with the warden." United States v. Davidson, 2020 WL 4877255, *5 (W.D. Pa. Aug. 20, 2020). Thus, "[a] prisoner may file a motion for compassionate release with the sentencing court 'after [he or she] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, **whichever is earlier**.'" United States v. Harris, 812 Fed.Appx. 106, 107 (3d Cir. 2020) (citing 18 U.S.C. §3582(c)(1)(A) (emphasis original). Further, "the [compassionate release] statute states that the defendant may file the motion thirty days after the warden receives his request." Id. (citing United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) ("But before they [file a compassionate-release motion], defendants must at least ask the Bureau of Prisons (BOP) to do so on their behalf and give BOP thirty days to respond.")).

"The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute." United States v. Schultz, ––– F.Supp.3d –––, 2020 WL 1872352, at *2 (W.D. N.Y. April 15, 2020) (citation omitted). "A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions." Id. (citations omitted).

As mentioned, since Jackson has submitted a request for compassionate release with the Warden based on his medical conditions and COVID-19, and 30 days has lapsed since he submitted his request, he can now proceed with his motion in this court since he exhausted his administrative remedies.

As the court in United States v. Epstein, 2020 WL 2537648, *2 (D.N.J. May 19, 2020), explained:

> Once a federally imposed sentence commences, a district court has limited authority to modify that sentence. Dillon v. United States, 560 U.S. 817, 825 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." (alterations in original) (quoting 18 U.S.C. §3582(b)). One such authority for modifying a sentence is found in the recently-enacted First Step Act, which allows a defendant to be afforded compassionate release for "extraordinary and compelling reasons." 18 U.S.C. §3582(c)(1)(A)(i).

The First Step Act, §3582(c)(1)(A)(i), provides in relevant part:

7

(c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the facts set forth in section 3553(a) to the extent that they are applicable, if it finds that –

(i) extraordinary and compelling reasons warrant such a reduction.

Thus, "a defendant seeking a reduction in his sentence under the First Step Act ["FSA"] 'bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release.'" *Id.* (citation omitted).

The government argues that Jackson has failed to establish that "extraordinary and compelling reasons" support a reduction of his sentence,

and that he has not met his burden to show that a reduction is warranted in light of the relevant §3553(a) factors.

The government states that "[t]he Sentencing Commission's policy statement defines 'extraordinary and compelling reasons' to include certain specified categories of medical conditions." (Doc. 65 at 15) (citing USSG §1B1.13, cmt. n.1(A)). However, as the court in Epstein, *id.* at *3, pointed out, "the Sentencing Commission had defined th[e] term ["compelling and extraordinary reasons"] as it relates to the BOP's discretion under the previous version of section 3582(c)(1)(A), it has not, however, updated its Policy Statement since the passage of the First Step Act." (citing United States v. Rodriquez, —— F. Supp. 3d ——, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020); *see also* U.S. Sentencing Guidelines Manual ("U.S.S.G."), §1B1.3, Application Note 1 (U.S. Sentencing Comm'n 2018)). In any event, "the Policy Statement provides useful guidance for district courts in assessing a defendant's eligibility for compassionate release, but it 'does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under §3852(c)(1)(A).'" *Id.* (citation omitted). "The Policy Statement provides that a defendant may show extraordinary and compelling reasons for compassionate release based on the medical condition of the defendant, the age of the defendant, the defendant's family circumstances, or for "other reasons." *Id.* (citing U.S.S.G. §1B1.13, Application Note 1).

In the instant case, as in Epstein, *id.* at *3, Jackson seeks compassionate release based on his medical conditions, as such, he "may show extraordinary and compelling reasons for release … where (1) '[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory),' or (2) he or she is[:] (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because that of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." (citation omitted).

The court first addresses whether Jackson has demonstrated extraordinary and compelling reasons for compassionate release, under the FSA, based on his medical conditions.

In its brief, (Doc. 65 at 19-20), the government states:

Jackson asserts that he suffers from a myriad of medical conditions, including asthma, chronic migraines, hypertension, ADD, and bipolar depression (Doc. 61, p. 23) that make him more vulnerable to becoming seriously ill should he contract COVID-19. Jackson's asserted conditions, however, do not rise to the level of severity required under the policy statement. The same has already been determined by Warden White of FCI Allenwood in evaluating and denying Jackson's request for reduction in sentence on April 2, 2020. (Doc. 61, p. 24). The same was determined for a second time on April 10, 2020 by Warden White of FCI Allenwood in response to a renewed inquiry by Jackson. The Warden's response confirmed that Jackson's risk score was "low" after consideration of BOP's nine identified criteria, including the claimed medical and mental health issues, and whether

the primary offense involved a sex offense. Doc. 57, p. 5). Jackson has not identified any condition that is terminal. Jackson has not claimed that his medical concerns substantially diminish his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover. USSG §1B1.13, cmt. n1 (A)(ii). In fact, Jackson's BOP medical records show that his diagnosed conditions are controlled by his prescribed medications and that he is receiving the proper medical care.

Also, as the government points out, Jackson basically indicates in his motion that he can perform a variety of jobs if he is released from prison based on his training and educational courses he completed in prison but does not indicate any physical limitations. (*See* Doc. 66 at 4) (Jackson alleges he has job offer to work as a construction laborer). As such, the government contends that "Jackson's assertions are indicative of a physically competent and able individual – inside and outside a prison facility. (Doc. 65 at 20).

In short, Jackson has not demonstrated that he would be at a greater risk to suffer severe complications if he did contract COVID-19 and, his medical conditions do not qualify as an "extraordinary or compelling reason" warranting his release from prison. *See* "People Who Are at Higher Risk for Severe Illness," https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-at-higher-risk.html.

In Epstein, *id.* at *2, the elderly defendant, who had contracted COVID-19 and recovered, was much older than Jackson and suffered from much more serious conditions, namely, he was "74 years old and suffers from

numerous underlying conditions, including heart disease, hypertension, diabetes, renal impairment, and obesity, that are known comorbidities for COVID-19." Nonetheless, the court in Epstein, *id.* at *4, found "that Defendant's conditions are being properly managed by the BOP at Otisville and that Defendant has not demonstrated extraordinary and compelling reasons for his release to home confinement."

In the present case, Jackson is being properly treated for his conditions at LSCI Allenwood, (*see* Doc. 61-1, Jackson's asthma and hypertension were controlled by medications), and he does not have any medical conditions which are so severe that they could be considered "extraordinary or compelling." *See id.* at *5. (*See also* Doc. 66 at 14, Jackson's lab test indicated that his kidney function looked good).

Also, Jackson does not allege that he was exposed to the COVID-19 virus at LSCI Allenwood, nor has he controverted with any evidence the substantial steps identified in the government's brief that the BOP is taking to protect the health and safety of both inmates and staff at the prison.

As the court in Epstein, *id.* at *6, concluded, "[m]ere 'speculation concerning possible future conditions does not constitute a 'compelling reason' for release." (citing United States v. Veras, 2020 WL 1675975, at *4 (M.D. Pa. Apr. 6, 2020); *see also* Raia, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release,

especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

As such, the court finds that Jackson has not met his burden and has failed to show that extraordinary and compelling reasons exist warranting his release from prison to home confinement.

Under the FSA, the court is also required to consider "the factors set forth in section 3553(a) to the extent that they are applicable" *Id*. at *3 (citing §3582(c)(1)(A)). As in Epstein, *id.*, the following factors in §3553(a)(1) and (2), apply to the present case:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>> (B) to afford adequate deterrence to criminal conduct.

Since the factual background of Jackson's offense is detailed in the government's brief, (Doc. 65 at 3-7), and is not objected to, the court will not repeat it herein. Suffice to say that the court finds that Jackson's offense of transporting a minor in interstate commerce with intent to engage in criminal sexual activity was severe and that contrary to his allegation that "[h]is role in the offense was unquestionably a minor one", he is indeed a danger to the community. As the government states in its brief, (Doc. 65 at 21), "the underlying conduct that led to Jackson's prosecution and incarceration – the

interstate transportation of minors for the purposes of prostitution – endangered the vulnerable minors as well as the safety of the community." Jackson himself recognizes the "very serious" nature of his offense. (Doc. 66 at 5).

Jackson has failed to establish that he is not a danger to the community. USSG §1B1.13(2). In fact, the government indicates, "[Jackson] tried to mitigate his crimes by claiming that the conduct of the minors was voluntary and that he did not 'force' them to participate in sexual acts" and, "Jackson initially claimed that he did know the ages of V-1 [victim one] and V-2 but later admitted that he knew they were minors." (Doc. 65 at 7). Thus, the court finds that Jackson's committed a very serious crime involving vulnerable minors, and that he presents a danger to the community.

The court also finds that "the need for [Jackson] to serve the remainder of his sentence still exists to 'reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense'", and thus, "the section 3553(a) factors weigh against [his] release to home confinement." Epstein, at *3 (citing §3553(a)). Moreover, the 60-month sentence imposed by the court on Jackson was a considerable downward departure from the guidelines range of 120 to 135 months imprisonment.

### III.   CONCLUSION

Based on the foregoing, Jackson's fourth motion for compassionate release from prison and transfer to home confinement, under

14

§3582(c)(1)(A)(i), related to the COVID-19 pandemic, **(Doc. 61)**, is **DENIED ON ITS MERITS**. Insofar as Jackson is challenging the decision by the BOP that he is not eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. Jackson's emergency request for a hearing regarding his instant motion, **(Doc. 67)**, is **DENIED**. An appropriate order will follow.

        s/ *Malachy E. Mannion*
   **MALACHY E. MANNION**
   **United States District Judge**

**Dated: September 14, 2020**
16-130-02