UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES, | : |
| | :  3:16-CR-130 |
| v. | : |
| | :  (JUDGE MANNION) |
| TREVON JACKSON, | : |
| Defendant | : |

## MEMORANDUM

**I.   BACKGROUND**

On September 22, 2020, defendant Trevon Jackson filed a motion for reconsideration, (Doc. 70), of the court's September 14, 2020 Memorandum and Order, (Docs. 68 & 69), denying, on the merits, his Emergency Motion for Compassionate Release and for a Modification in Sentence under 18 U.S.C. §3582(c)(1)(A), as amended by the First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194. (Doc. 61). In his prior motion, Jackson requested a transfer to home confinement related to his 60-month sentence due to the COVID-19 pandemic and his underlying "chronic medical conditions", which he alleged put "him at increased risk from COVID-19."[1]

---

[1] The court notes that since it stated the background of Jackson's case in its June 5, 2020 and September 14, 2020 Memoranda, (Docs. 58 & 68), it will not be fully repeated herein.

1

The court also dismissed Jackson's challenge to the decision by the BOP that he was not eligible for home confinement designation under the CARES Act, since the BOP Director has the authority to make this determination, not the court.

Jackson is currently confined in prison at LSCI-Allenwood, Low Security Camp, located in White Deer, Pennsylvania, and he seeks the court to reduce his sentence to time served and to release him from prison to his house in Wilkes-Barre, Pennsylvania, with his wife and children.[2] He has served 3 years and 6 months of his sentence, and he is eligible to be released to a halfway house on January 26, 2021. Jackson's projected release date from prison, with good conduct time, is May 27, 2021. See https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results.

---

[2]The number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/. According to the BOP's website as of October 28, 2020, there was one positive case of COVID-19 among inmates and one positive case for staff at FCI Allenwood Low, and both recovered. There are no current positive cases at FCI Allenwood Low among either inmates or staff. The government also points out that approximately 988 inmates are housed at Allenwood Low, and that this is noteworthy since there are presently no positive cases at this facility.

Since the government had previously outlined the safety procedures and protocols enacted by the BOP in prisons to protect inmates and staff and cites to the BOP's websites, they are not repeated herein. (Doc. 65 at 7-14). *See also* BOP website at: www.bop.gov/coronavirus/index.jsp.

The court also notes that Luzerne County, where Jackson is seeking to be released on home confinement, has 5,273 positive cases of COVID-19 and 197 deaths as of October 28, 2020. *See* Pa. Dept. of Health website.

2

Jackson requests the court to reconsider his "extraordinary and compelling circumstances" for his compassionate release from prison based on his medical conditions of hypertension, obesity and asthma, as well as severe chronic migraines, combined with the alleged "critical situation" from COVID-19 at the prison. Jackson states that he is at a heightened risk from the virus at FCI Allenwood Low where he alleges the CDC safety guidelines cannot be practiced. Jackson argues that he demonstrated his serious physical and medical conditions "substantially diminish" his ability "to provide self-care within the environment of a correctional facility" during the pandemic, and that they constitute "extraordinary and compelling reasons" for his release under 18 U.S.C. §3582(c)(1)(A)(i).

Jackson further argues that the court should reconsider the relevant factors in §3553 and, he contends that he does not pose a danger to the safety of the community based his underlying offense.

On September 23, 2020, Jackson filed a letter to the court as a supplement to his motion for reconsideration clarifying that he is requesting the court to convert his remaining prison time to time served and to supervised release, and that he is not seeking relief under the CARES Act. (Doc. 72). He further states that if he is released he will try to get a job in a lawyer's office as a paralegal. Additionally, Jackson requests the court to appoint him counsel and/or schedule hearing on his motion.

On October 6, 2020, the government filed its brief in opposition to Jackson's motion for reconsideration and argues that his motion for

3

compassionate release was properly denied on its merits. (Doc. 75). The government also filed, under seal, copies of Jackson's relevant recent BOP medical records. (Doc. 77).

Letters in support of Jackson's request for release from prison have also been filed under seal. (Docs. 79, 82 & 83).

On October 19, 2020, Jackson filed his reply brief with attached Exhibits, including his grades for paralegal courses he completed in prison, as well as a letter in support of his release from his cousin. (Doc. 81).

## II.    DISCUSSION[3]

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of

---

[3]Jackson, age 28, is currently serving a 60-month prison sentence that was imposed by the court on December 19, 2016, after he pled guilty to transporting a minor in interstate commerce with intent to engage in criminal sexual activity, aid and abet, 18 U.S.C. §2423(a). (Doc. 36). The court also ordered Jackson to be on five years of supervised release after he was released from prison. Jackson is also required to register as a sex offender pursuant to the Sexual Offender Registration and Notification Act. *See* 42 U.S.C. §16901, *et seq.*

4

law or fact or to prevent manifest injustice." Howard Hess Dental Labs. Inc. v. Dentsply Intern., Inc., 602 F.3d 237, 251 (3d Cir. 2010) (quoting Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)); Chesapeake Appalachia, LLC v. Scott Petroleum, LLC, 73 F. Supp. 3d 488, 491 (M.D. Pa. 2014) (Generally, reconsideration motions should be granted sparingly.). "The standard for granting a motion for reconsideration is a stringent one ... [A] mere disagreement with the court does not translate into a clear error of law." Chesapeake Appalachia, LLC, 73 F. Supp. 3d at 491 (quoting Mpala v. Smith, 2007 WL 136750, at *2 (M.D. Pa. Jan. 16, 2007), aff'd, 241 Fed.Appx. 3 (3d Cir. 2007)) (alteration in original).

The government argues that "Jackson offers nothing new in the instant motion outside what he previously presented and argued", and that "[h]e again has not identified 'extraordinary and compelling reasons' for a reduction within the meaning of §3582(c)(1)(A) and the Sentencing Commission's policy statement." (Doc. 75 at 26).

In his motion for reconsideration, Jackson largely rehashes his reasons why he believes he is entitled to be released from prison under §3582(c)(1)(A), and he raises arguments that were previously available to him. A motion for reconsideration is not a proper vehicle for such purposes. *See* Eshun v. Welsh, 2019 WL 3022959 (M.D. Pa. April 10, 2019). Indeed, it is well-settled that a motion for reconsideration "may not be used to give a dissatisfied party a chance to "[change] theories and try again," obtaining a "'second bite at the apple.'" Kropa v. Cabot Oil & Gas Corp., 716 F.Supp.2d

5

375, 378 (M.D. Pa. 2010) (citation omitted). Also, simply because Jackson is unhappy with the result of the court's September 14, 2020 opinion "is an insufficient basis to grant [him] relief." *See id.* (citing Ogden v. Keystone Residence, 226 F.Supp.2d 588, 606 (M.D. Pa. 2002)).

The burden for reconsideration is on the moving party and Jackson does not demonstrate that any of the three grounds exist in his case which are required for the court to grant reconsideration.

The court gave a detailed explanation for its finding that Jackson failed to demonstrate that his medical conditions qualified as "extraordinary or compelling reasons" warranting his release from prison and it will not repeat this discussion. As the government points out, (Doc. 75 at 28), "Jackson makes no mention of any serious physical limitations or that he is incapable of caring for himself while incarcerated", and "[he] repeatedly speaks of his career plans upon release in the context of construction work, road work, and distribution centers." (citing Doc. 61-1, 62, 63, and 70). Also, Jackson's recent BOP medical records submitted by the government, (Doc. 77), indicate that he is receiving regular treatment for his conditions and that they are controlled by his medications. The record in this case also demonstrates that Jackson is able to function in the prison.

The court also considered the relevant factors set forth in §3553(a) in its prior decision. The determination of "whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the §3553(a) factors is committed to the discretion of the [district

court]." United States v. Davidson, 2020 WL 4877255, at *21 (W.D. Pa. Aug. 20, 2020) (citing United States v. Pawlowski, 967 F.3d 327, 330 (3d Cir. 2020)). In particular, the court considered the relevant §3553(a) factors, including, "the history and characteristics of the defendant," and "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, ... to provide just punishment for the offense[, and] ... to afford adequate deterrence to criminal conduct." Pawlowski, 967 F.3d at 330 (internal citations omitted).

The court also reaffirms that reducing Jackson's remaining prison term to time served would not be sufficient incarceration to reflect the seriousness of his offense which endangered vulnerable minors. Indeed based on the attachments Jackson submitted with his present motion, (Doc. 81 at 10-12), he appears to try and minimize his role in his offense which shows that the original term of incarceration imposed in this case should not be reduced. The court finds that no clear error of law or fact was made with respect to its prior findings that any reduction in Jackson's sentence, including a reduction to time served as he seeks, would undermine the very serious nature of his crime, and that there is a continued need to protect the public from further crimes by Jackson.

As the government states, "[n]othing has changed in terms of the danger Jackson continues to pose to the public if released prior to conclusion of his sentence", see Doc. 75 at 8-11 (the disturbing facts underlying

Jackson's offense conduct), and "the statutory sentencing factors do not weigh in favor of his release." (*See also* Doc. 75 at 34-35).

Finally, since the court finds that Jackson is not entitled to reconsideration with respect to his motion for compassionate release, his requests for a hearing regarding his present motion, and for the court to appoint him counsel, s*ee* U.S. v. Olden, 296 Fed.Appx. 671, 674 (10th Cir. 2008) (defendant has "no constitutional right to assistance of counsel in pursuing his §3582 motion"), (Doc. 72), will be denied.

### III. CONCLUSION

Based on the foregoing, Jackson's motion for reconsideration of the court's denial of his motion for compassionate release under §3582(c)(1)(A)(i), **(Doc. 70)**, is **DENIED**. Jackson's requests for a hearing regarding his instant motion, and for the court to appoint him counsel, **(Doc. 72)**, are **DENIED**. An appropriate order will follow.

s/*Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: October 30, 2020**
16-130-03